ROANE, Judge.
The first question important to be considered is what estate James the heir at law took under the *10 will ? This will was made antecedent to the act of AssentWyj [1785, C. 62, 12 Slat. Larg. 157,] which considers a fee as passing unless restrained by words of limitation; and must therefore stand upon the acknowledged rules of law which then prevailed. At that time the rule was, that even in last wills, if words of inheritance were wanting, an estate for life only would pass, unless from a view of the whole will the intention of the testator obviously appeared, to be that a greater interest should pass. I shall then examine this will at large without confining myself to the particular clause under consideration, for by this means only can we come at an intention which the testator knew so little how to express. But let me premise in the first place that no inference is to be drawn from the want of technical words, unfavorable to an enlarged construction of the devise now under consideration; for it is apparent from the face of the will that the testator was wholly illiterate and incapable of expressing himself properly. Whenever he uses a technical word, he uses it improperly and unnecessarily. In some of the bequests of the personal estate, he uses the word heirs; the meaning or legal import of which he certainly knew not; for he uses the same word as synonymous with children in the clause where he gives a negro woman named Dice and her heirs to Richard.
■ Neither can any inference against an enlarged construction be drawn from a tenderness for the rights of the heir at law, who it was said is not to be disinherited without express words ; because the devisee in this case was the heir at law of the testator. The word have* in the devise to James is the same as that used in the clause which disposed of the cattle. In the latter it not only passed the absolute interest according to the principles of law, but the testator certainly intended that it should have this operation, when applied to personal propei’ty ; which fx’om its nature was every day undergoing some change, and the value of which depended on the unlimited use in it. It is fair then to give to the same expression in the devise of the land the same meaning. It is the appropriate meaning of the testa *11 tor who certainly did not know that a difference of expression was necessary when applied to real and personal estate. The provision for Richard in case James should sell, does not directly give a power to sell (for if it did, no doubt could exist that a fee "passed,) but it explains still further the meaning which the testator affixed to the term have, by shewing that he contemplated an existing right in James to sell, in consequence of the interest which the will gave him. For he certainly supposed that all the interest which James could claim was under the will, or else he would not have made the devise ; and as he could not sell unless he had a fee, it is clear that the intention was to give a fee.
If then James took a fee, the next question is if the limitation over to Richard is good ? It certainly is so by way of executory devise, as the contingency on which it is to depend must happen within the time prescribed by the rules of law respecting limitations of this kind.
The only remaining question then is, what estate Richard took in the lands limited to him upon the event which has happened of other lands coming to James by descent ? I think he also takes a fee. The same terms are used : He is to have the ,land; and according to the rule which I have before mentioned, that the same word used in different parts of the will shall have the same meaning, unless there be circumstances shewing an intention to vary it, Richard will take a fee if by force of the same expression a fee passed to James. If the tract was too small to divide between two sons, he could never have intended a division as to the interest in it. I am therefore for reversing the judgment.
FLEMING, Judge.
The principal question is, whether Richard took an estate in fee or for life in the lands for which the present suit is brought ? To decide this we must search for the intention of the- testator, that we may see whether it be strong enough to over-rule the principle of common law, which requires words of inheritance to pass a fee. To discover this intention it may not be amiss to consider the situation and the circumstances of the testator. * He had two sons, for whom he wished to provide, and a third for whom he intended nothing. His whole es *12 tate consisted of about sixty acres of land, a few slaves, some stock and a tract of land in expectancy. To divide the sixty acres of land would afford but little benefit to-either son ; he therefore prefers the eldest, but was determined to provide for his second son. also, so soon as the estate, which he expected, should come to his family. These intentions were to be expressed by a very illiterate man, who from the face of the will it is evident knew not the necessity of using technical terms, or in what' manner to apply them. But in most cases of this sort unless contra-' dictory expressions are used, there will be some circumstance which will lead to the mind of the testator. Such is the present case.
The testator does not give a power to sell in express terms ; but he says that James shall have his lands, and immediately declares in substance that he supposed he had. given him such an estate as he might sell. The effect of this clause is equally powerful to my mind, in demonstrating the intention of the testator, as. if he had given a power to sell. For, whether in the act of giving he annexed a power which could only appertain to a fee, or first gives the land and then declares that such a power is acknowledged to exist, the intention is the same. If then James took a fee, which I am clear he did, the same estate passed over to Richard. For, it was obviously the intention of the testator that James should have one estate and Richard the other, with this difference only that James should have an election.
The objection to the limitation over as being toó remote is unfounded. For, as Richard was in esse at the time the will was made, a perpetuity could not take place. Upon the whole, I have no doubt about the intention of the testator, and that a fee passed in the land in question to Richard. Of course I think the judgment ought to be reversed.
LYONS, Judge.
If we consult common sense and the reason of mankind, we shall be satisfied that where a man gives an estate in lands, without limitation or restraint, hé means to give his whole intérest in the same manner as if it had been a devise of money and 'personalties. But'the principle having been once admitted, that words of limitation were necessary in order to carry a fee, -there was, for a long time, no Judge found bold enough to emancipate himself from the influence of'the principle, though all of them have endeavored to undermine it. They have therefore *13 laid hold on any words to avoid the rule of law, and effectuate the intention of the testator. Thus the word estate, charging the lands with a sum in gross, or giving a power to sell, have all been held to give a fee ; and it has finally been established by a long course of decisions that the manifest general intent of the testator shall prevail, if by any possibility it can be carried into effect without violating the rules of law.*
To apply these principles to the case under consideration. What did the testator mean when he said that James should have the land ? It will be said perhaps that this expression taken by itself is too doubtful to pass a fee ; but then the testator has explained what he meant by it. For he considers that his son James might possibly sell the estate; but, if he had such a power, the testator must necessarily have supposed that he derived it under the will; and of course conceived that he had before given such an interest as would authorise the sale. When therefore he says that James shall have his land, his meaning was that James should have the whole interest. '
Having fixed an appropriate meaning therefore to the word have, it is fair to give it the same interpretation in the limitation over to Richard. Because, it is manifest that his intention was, that whatever estate James took, should go over to Richard in the event of a descent to James. Besides, if James sold the land, Richard was to have half the purchase money, not for life, but absolutely; for there is no restriction, he is to have half the purchase, which is a plain disposition of the whole interest. So that in that event the testator clearly meant the whole interest; and therefore the fair inference is, that he intended the same thing in case no sale took place. If there be a devise to A. unless his father purchase other lands of the same value for him, and then to another '; here A. has a fee, because purchase imports an absolute purchase, [Green v. Armstead,] Hob. 65. So if there be a devise to A. for life, and then to a son, except A. purchase land of the same value for the son, and then that A. shall sell; here, if A. does not purchase, the son takes a fee for the reason just mentioned. 2 Cro. Jac. 599, Hob. 65. These two cases are in principle the same with that at bar, and appear to me to decide the cause. For the first expressly proves a fee in James and the latter a like estate in Richard.
*14 An objection was made to the remoteness of the limitation to Richard ; but as the estate was to descend to James himself, that is, in his life-time', it was to take place within a life in being, and consequently is within the allowed limits for the vesting of executory devises.
I concur with the rest of the Judges, therefore, that the judgment of the District Court should be reversed.*

[* While I am not sure that too much stress was not placed upon the word “ have” in the case of G. and G. it is certain that that word did not afford the governing principle of the decision: it was only an ingredient or circumstance in the case: the principal ground of the decision seems to have been, that a fee was inferred, from the testator’s having legalized a power in the devisee to sell: and besides, that testator appears to have been extremely ignorant and illiterate. Per Roane, J. in Mooberry v. Marye, 2 Munf. 464.]

[* Shelton's exrs, v. Shelton, 1 Wash. 56; Kennon v. McRoberts et. ux. 1 Wash. 99; Crone v. Odell, 1 Ball and Beatty, 481 ; Kellett v. Kellett, Ibid. 542; Doe dem. Hick v Dring, 2 Mau. and Selw. 448.]

[* Wyatt v. Sadler's heirs, 1 Munf. 537.]

[*See Smith et ux. v. Chapman et subject is most elaborately consideral. 1 H. & M. 240-302, where this ed.]