Judge Cabell,
fames Marye having, by the third clause of his will, devised certain lands to his three daughters, and by subsequent parts of his will, bequeathed to them certain slaves, declares in the eighth clause, that in case of the death of either of his daughters before marriage, “ their parts” are to be equally divided among the surviving sisters. The important question, growing out of the facts agreed by the parties is, whether the term “ parts,” in the eighth clause, was intended by the testator to. apply only to slaves, the subject of the immediately preceding clauses, or to the lands, which were the subject of the third article. If the term, as here used, be applicable to slaves only, then it is admitted that the appellants can have, no title to the land in controversy. Whether it is to be so applied or not, depends on no rule of law, but on the intention of the testator, as discoverable by the principles of fair and reasonable interpretation.
I am of opinion that he intended slaves only. Much was said, in the argument, of the rude and inartificial structure of this will. It is certainly defective in the use and application of technical terms, and, sometimes, betrays a want of grammatical accuracy; but it is the offspring of a well organized mind that perceived its sübject clearly, and that understood enough of language to make it subserve its most important end, to impart that perception to the minds of others. The method with which it proceeds is really remarkable, and affords a clew to the intention of the testator on the point under consideration. In some wills, the only method to be found is that which results from a wish to throw into one clause, or into one view, all the devises or bequests that relate to the same individual, without regard to the *459 subject of those devises or bequests. In this will, the intention of the testator, as to method, is confined to the subject of his devises. He first disposes of his lands, and then of his slaves, subjecting the dispositions in both cases to such limitations, and to such only, as his opinion of propriety, or his fancy, dictated. It is no objection to the character of this will, for method, that the testator has introduced, almost at the close of it, a clause declaring that part of his lands which he wished to be first subjected to the payment of his debts. It is far separated from the disposing parts of the will, and is evidently the effect of an afterthought. In a will thus regularly and methodically constructed, we should naturally expect that if the testator intended to annex a limitation or restriction to any particular disposition, the limitation or restriction would quickly follow the disposition, or would not be so remote as to leave its application altogether doubtful. We accordingly find that the clause devising lands to his son is immediately followed by a declaration that, in case of his death before he attains the age of twenty-one years, the land is to be divided among his sisters. The clauses giving certain slaves to his daughters are followed by the. declaration that, in case of the death of any of them before marriage} their parts are to be divided among the surviving sisters ; and the clause giving the residue of the slaves to his son is immediately followed by a limitation over to his sisters tn case of his death. In every case, then, we find a limitation over expressly and indisputably annexed to the devise, except in the case of the devise of lands to the daughters. How can its absence in this case be accounted for ? Upon no other principle than that the testator did not intend it should exist. What were his motives for placing the devise of lands to his daughters, on a ground so different from that which prevailed with respect to his other property, is not necessary, and might be difficult, for us to deter *460 mine. It is sufficient that such was his will. It is contended, however, that the term “parts,” in the eighth, clause, is extensive enough to embrace and to control every thing that had been given to the daughters, both lands and. slaves. There can be no doubt but that the testator might have made it so. The question is has he intended to make it so ? As used in the clause under consideration, it is a relative term ; and, as such, must, according to the most obvious and reasonable construction, be confined to the distinct and particular subject the testator was then disposing of; unless extended to other matters by clear and express declarations. The testator had previously disposed of his lands, beginning with his son, and ending with his' daughters. He had entered on a new and distinct subject, the apportionment of his slaves among his children, beginning as before with his son; and after having given such of them as he thought proper to his daughters, we find, immediately following, the clause in controversy—-that if any of his daughters should die before marriage, their part should be divided among the surviving sisters. This mere statement would seem to make it almost impossible not to believe that slaves only were, at that moment, in the mind of the testator. But if the previous expressions would have left it doubtful, the doubt must be removed by observing that all the subsequent parts of the same clause, and also the whole of the next, relate exclusively to slaves; and that there are no expressions extending the term u parts” to other matters than those which the testator was then disposing of. The devise of lands to the daughters, therefore, is, in my opinion, uninfluenced by the limitation over, in the eighth clause, on either of them dying before marriage. It is, then, unnecessary to follow the counsel through their extensive investigations on the effect of the clause in the will concerning the payment of debts ; nor is it material to inquire whether Sally Marye took, by the *461 devise to her, a fee-simple, or only a life estate in the lands in controversy. If she took a fee-simple, James Marye (the appellee) will be entitled as her heir at law; she having died without child and intestate. If she took only a life estate, the fee, being undisposed of by the will, descended to the said James Marye, as heir to his father. On the merits, therefore, I have no hesitation in affirming the judgment.
It was attempted to assimilate this case to that of Clay v. White. But I can perceive no kind of resemblance. In Clay v. White, the verdict showed that the plaintiff was entitled to recover only part of the land in controversy; but, that part not being so described as that possession could be taken of it, the verdict was set aside on that ground. Here the title of James Marye to the whole is established; and the defendants admit, in the case agreed, the lease, entry and buster; which admission, at that time, and in that form, is equivalent to the finding of a jury in a special verdict. It cannot now be disputed. It goes to prove the possession of the whole land by, the appellees, and completely does away every effect which might otherwise have resulted from the previous possession and lease by Weir, in the record mentioned. As to the death of the lessor of the plaintiff', I had not expected that such an objection would be seriously urged after the case of Kinney v. Beverley.
On every point, then, whether as to form or as to the merits, I am for affirming the judgment.
Judge Roane.
This case has been ably and elaborately argued, and several questions have been raised upon it, which it is unnecessary to decide, under the very plain: and simple view I have taken of the subject.
The general propriety of the court’s omitting to take too wide a range in giving its decisions is increased in the instance before us, by considerations arising as well from the actual state of the docket of the court, as from *462 the reflection that every ease of the construction of a wiM depends, in a great measure, upon its own particular circumstances.
In the will before us, the testator, in the three first clauses thereof, takes up the subject of the distribution of his /and among his children; he then dismisses the subject, and never again resumes it, unless (which is contended) a part of the 8th clause relates to the ¿and of the daughters as well as their negroes.
The 6 next clauses, from the 4th to the 9th inclusive, relate only to.his negroes, unless the before mentioned part of the 8th clause should be adjudged to form an exception.
The 10th & 11th clauses relate to the raising and appropriating money to pay his debts; and after some necessary provisions touching the appointment of guardians for his children, &c.
The 15th clause designates and subjects a part of his land to be sold, in preference to his negroes, for the payment of his debts. It returns back, indeed, to the subject of his land, but that only for the purpose aforesaid, and not quoad a distribution of it among his children.
This will, thus judiciously and systematically arranged, and adapted to the several subjects aforesaid, each of which is taken up in its due order and finally disposed of, it is admitted, in every instance, (except it be part of the 8th clause as aforesaid,) bespeaks a regular system of distribution on the part of the testator; it is incompatible with the idea that the testator would pass, by fits and starts, from one subject to another, notwithstanding he or his scrivener (for it is not shown that the will was written by himself) may in a few instances have sinned in point of grammar.
In a will of this character, it would at least be necessary, in order to affect one class of property, by means of clauses relating regularly, if not exclusively, to another, that there should be an adequate expression to that ef *463 'bzzii otherwise, the general character of the will, as aforesaid, would turn the scale.
In the case before us, the 8th clause follows immediately after four several clauses relating only to negroes, and is immediately succeeded by the ninth section, relating also exclusively to the same subject. The 8th section itself will also be taken to relate to that description of property only, unless there be clear or imperious expressions to the contrary; or unless, from a general view of the will itself, this shall appear to have been the manifest intention of the testator.
Besides, that 8th section is compounded of two sentences, the last of which relates expressly to negroes; and by transposing these sentences (a liberty often taken hy the courts in construing both wills and statutes) the last sentence, when thus transposed, would be affected and controlled by the first.
This, then, at most, is not a question whether a clause of a will shall be differed in construction from those which immediately precede and follow it; but whether a single sentence of such a clause shall be construed (to complete the climax) so as to derange the clause itself of which it is a member. Such a construcfion would scarcely be justified in any will, however irregular or incoherent in its other parts; but certainly not in one of the •systematical and regular character of that before us.
in a will of this cast, it was necessary for the testator to point explicitly at the other class of property; or he will be taken to mean only such as he was disposing of by the general tenor of the clause in question: after having dismissed one subject, anti taken up another, he will not be construed to have resumed the former, unless his expressions to that effect be dear or unequivocal.
The word “parts” however, has been clutched at to carry the 8th clause into real property also, because the .same word had been before used in relation to the lands. There is about as much force in this argument, as there *464 is in that founded upon the word “¿'foe,”-which is used in all the clauses, or upon the word ‘' have,” as quoted (ad captandum) from the case of Guthrie v. Guthrie.(a) While I am not sure that too much stress was not placed •upon the word “have,” in that case, it is certain that that word did not afford the governing principle of the decision : it was only an ingredient or circumstance in the case: the principal ground of the decision seems to have been, that a'fee was inferred, from the testator’s having legalized a power in the devisee to sell; and besides, that testator appears to have been extremely ignorant and illiterate.
As for any arguments derived from consequences resulting, either way, from the construction of the 8th clause, we have no data to go by. For example, the value of the lands devised !o the son not being found or agreed in this case, it does not follow that the construction contended for on the part of the appellant would not enrich the surviving daughter or daughters far beyond the eldest son and heir, which would be undoubtedly to contravene the received maxims of the time when the will was executed; whereas a construction giving all the interest in the negroes to the daughters, and suffering the son and heir to take such interests in the land, as were not expressly devised away from him, would both accord with the maxim which protected the heir from being disinherited, without express words, or a clear intention in the testator to that effect, conform to the then almost universal practice of the country which gave the lands to the sons send, personal property to the daughters, and, in the actual case before us, would, perhaps, yield a liberal provision to the surviving daughter or daughters : I repeat, however, that we have only probabilities to go by in this case; and they would seem to be justified by the con-„ struction arising out of the will itself.
It is said that a construction of the 8th clause limited to slaves is not natural, as the same slaves had before *465 been given away to the legatees by the deed of gift. The answers to this idea are, 1st. That that objection would equally apply to the four preceding clauses, which relate exclusively and expressly to the same slaves; 2dly. That the testator can as well have intended to limit these slaves, in the second instance, as to give them in the first; and, Sdly. That the appellants themselves admit that that clause clearly relates to the slaves; but contend, at the same time, that it relates also to lands.
These are the principal (for I omit the minuter) reasons which induce me to conclude, very clearly, that the 8th section relates only to negroes and not to the lands; and that if the female appellant took a fee in the lands in question, it was merely under the third clause, or at least without deriving any aid from the 8th.
If the 8th clause be rejected, it is entirely immaterial in the case before us, whether the deceased daughter took a fee or not; and therefore I shall not go into that question. If she took a fee, the lessor of the plaintiff is entitled, as he is agreed to be “ the heir at law to his two sisters Susanna and Sally f and, on that ground, is also entitled to recover, On this point it is said by Mr. Botts, that we are not to presume that James Marye the son (who is dead) left issue, or a will; that, if not, Mrs. Weir is his heir, and that it would be improper and absurd to take the land from her, in order to give it to her, without stopping to inquire whether, in that case, she would be his sole heir, or only in common with the remaining sisters of the half blood, who would also, probably, be entitled to part j the answer is, on the authority of Kinney v. Beverley, 1 H. M. 531. that the judgment is to be rendered in the same manner as if the lessor had not died; and that the inconvenience of the sheriff’s not knowing to whom to give possession does not alter the case as he;always acts under the control of the court.
With respect to the objection, that the case does not find either Slaughter or Stevenson to havo been in posses *466 sion of the premises, and that finding Mooberry t<S have' been in possession of part only, leaving Weir in possession of the balance, judgment ought not to have been rendered against Mooberry therefor; there is nothing in it. The defendants confessed lease, entry and ouster for the whole premises; and the case finds a lease, entry and ouster for the whole. If there had been .nothing else in the case, it is presumed that the finding would have been sufficient to justify a recovery. This ouster by the defendants, and their consequent possession, would be construed tó be-continued, unless the contrary were shown, upon, the authority of Birch v. Alexander, 1 Wash. 37. In the case before us, that possession is not shown to have' been disturbed or' interrupted, even as to a part of the premises. It is true,¡it is agreed, in another part of the case, that- Weir leased a part of the premises to Mooberry ; but it is not found that he entered thereupon. He therefore got no possession under this finding; and the case stands Upon the possession agreed to be in all the defendants under the general finding of lease,- entry and ouster as to the whole premises. Upon the whole, I am for .áffirming the judgment.
Judge Fleming.
There are certain well established general rules respecting the construction of wills, thdugh it is sometimes difficult to apply them to particular cases ; as the phraseologies of wills are almost as .variant as the tempers and understandings of the testators. One leading principle in construing wills of doubtful meaning is, to take and consider the whole together, and thereby, if possible,' to discover the intention of the testator; and, when discovered, it is to govern, unless repugnant to some settled rule of law, and even there, perhaps, in particular cases, if the intention appear strong and clear; otherwise, the rule of law must prevail; and it has been often remarked, as well by the judges in England as in this court, that adjudged cases are more frequently introduced to obscure *467 and confound, than to elucidate questions of this kind, and tend rather to frustrate and defeat, than to explain and support, the intention of the testator.
|n the case before us, there being no words of limitation or inheritance in the devises to the daughters; and no expression, throughout the will, manifesting or inducing a belief that he intended them a fee, it seems to me that they took an estate for life only. The appellant’s counsel, however, contended that, as the testator, in the first clause of his will, directed that all his just debts, and funeral charges, should be first paid; his whole estate, both real and personal, was charged with the payment of his debts ; and, therefore, the daughters took a fee in the lands devised to them. But I take the rule to be, that, where the debts of the testator are charged upon a particular devisee, or where the whole estate is expressly so charged, in either case, perhaps, a fee passes without words of limitation, or inheritance; the reason of which is obvious, (being laid down in all the books on the subject,) and need not be here repeated. In the present case, the testator appropriated other ample funds for the payment of his debts in exclusion of the lands devised to his daughters, and therefore the rule cannot apply to them.
But admitting they took a fee in those lands, it seems that, upon the deaths of Susanna and Sally Marye, intestate, and without issue, the lands devised to them respectively descended to James Marye, their brother and heir at law; as it appears clearly to me that the eighth clause of the will, directing that w in case of either of his daughters’ deaths before they marry, that then their parts to be equally divided among the surviving sistenj,” (immediately following the four preceding clauses, in which slaves only are mentioned,) must be-confined to the slaves; and cannot, by fair construction, have reference to the third clause of the will, in which the lands are devised to the daughters ; and this idea seems strengthened fey the next succeeding clause in the will, wherein *468 uses the same expression. After giving to his son Jaméis all the rest, or remainder of his negroes, he adds, “ and in case of his death, then his part to be equally divided among his sisters.”. His part of what ? of. the negroes just mentioned in the preceding part of the clause. But, by construing it to have, reference to the land, it would disinherit, -in favour of the daughters, any issue his son James might leave behind him at the time of his death ; which never could have been the intention of the testator.
With respect to the suggested irregularity of the proceedings in the cause, a satisfactory explanation has been already given by a judge who preceded me, and need not be repeated: and I shall only add my concurrence that the judgment be affirmed.
Unanimous affirmance.,

 1 Call, 7.