BRANDT, The (COLE v.). See Case No. 2,-978.

BRANDT (HOFFHEINS v.). See Case No. 6,575.

## Case No. 1,814.

### BRANDT v. VIRGINIA COAL & IRON CO. et al.

[2 Hughes, 501;[1] 6 Chi. Leg. News, 290.]

Circuit Court, D. West Virginia. Jan. 10, 1874.[2]

WILLS — CONSTRUCTION — DURATION OF ESTATE—LIFE ESTATE—POWER TO DISPOSE OF FEE.

1. S., who resided a short distance from the line of the Baltimore and Ohio Railroad, but before the road was made, and there owned a small tract of about 100 acres of land, which now proves to be a valuable coal tract, worth about $100,000, but then not exceeding $2,000, made a will in which this clause appears: "I give and bequeath to my beloved wife, Nancy Sinclair, all my estate, both real and personal, that is to say, all my lands, cattle, horses, farming utensils, household and kitchen furniture, with everything that I possess, to have and to hold during her life, and to do with as she sees proper before her death." The testator died in April, 1831, and in 1839 the widow conveyed the land to the person under whom the defendant claims title: *Held*, the will gave the widow a life estate in the land, with power to dispose of the same

2. She having in her lifetime conveyed the said land by a fee simple deed, she did no more than she was by the will authorized to do, and the deed passed the fee in the land to the grantee of the widow.

[In equity. Bill by Daniel R. Brandt against the Virginia Coal & Iron Company and Jane Sinclair, to restrain defendant company from mining coal, and for an accounting. A preliminary injunction was granted, which on this hearing was dissolved, and the bill dismissed.]

John J. McKennan, Jackson & Small, and Mr. Brant, for complainant.

J. D. Armstrong, Geo. H. Lee, and Johnson & Stephenson, for defendants.

JACKSON, District Judge. The bill filed in this case discloses that Robert Sinclair, a citizen of Hampshire county, in this state, died on the 1st day of April, 1831, leaving a will by which he disposed of his estate, in

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]
[2] [Reversed in Brant v. Virginia Coal & Iron Co., 93 U. S. 326.]

these words: "I give and bequeath to my beloved wife, Nancy Sinclair, all my estate, both real and personal; that is to say, all my lands, cattle, horses, farming utensils, household and kitchen furniture, with everything that I possess; to have and to hold during her life, and to do with as she sees proper before her death." The testator left surviving him a widow and eight children, his heirs-at-law, one of them, Jane, being insane. On the 18th day of April following, the will was duly admitted to probate. On the 19th day of February, 1839, Nancy Sinclair, the widow of the testator, by her written contract, sold "the tract of land" to Duff Green, who purchased it for the Union Potomac Company, of which he was president. On the 20th day of July next ensuing, she conveyed by deed, to the Union Potomac Company, the land devised to her by her deceased husband, and described it as "all that tract or parcel of land on which the said Nancy Sinclair now resides, being the same which was conveyed to the said Nancy by the last will and testament of her late husband, Robert Sinclair, together with all the estate, right, title and interest, trust, property, claim, and demand whatsoever, at law and equity, of the said Nancy Sinclair, of, in, and to the same." At the same time, to secure the payment of the purchase-money mentioned in the deed, the Union Potomac Company, by Duff Green, their president, executed a bond and mortgage on the land conveyed by Nancy Sinclair to the then company. On the 24th day of August, 1854, Nancy still being the owner of the bond and mortgage, which were then unpaid, transferred all her interest in them to the complainant and one Hector Sinclair, who, on the 2d day of July, 1857, instituted a proceeding in the Hampshire circuit court to foreclose the mortgage, and such proceedings were had, whereby the land was sold under the decree of the court to Patrick Hammill, under whom the defendants claim. Prior to this proceeding, however, Hector Sinclair and Brant, the complainant in this suit, who is now the owner of Hector Sinclair's interest, purchased whatever interest seven of the heirs had to the lands in controversy. Under this purchase the complainant claims to have acquired a reversionary interest in the land devised by the will of Robert Sinclair.

The first question for consideration, is to ascertain what estate Nancy Sinclair took under the will of her husband. It is claimed by the complainants that she took only a life estate in the land, with no power to dispose of it or to divest the heirs of the reversion, whilst the defendants insist that the will either gave her an estate in fee or an estate for life, with power to dispose of it during her life, which, if exercised by her, would divest the heirs of the reversion. It is a well-settled rule, not to be questioned at this day, that courts, in construing wills, will so interpret them as to give effect to all the words employed by the testator, when not inconsistent with each other or in conflict with the law. In the case of Smith v. Bell, 6 Pet. [31 U. S. 68], Judge Marshall, in delivering the opinion of the court, lays down with great clearness and precision the rule of construction when he says: "That the intention of the testator as collected from the whole will must govern, and that every word must have operation if any sensible meaning can be given it." Applying this test to this will, let us, if possible, first ascertain the intention of the testator from the instrument itself, independent of surrounding circumstances. The first clause of the will gave to his wife all his estate, both real and personal, that is to say, "all his lands, cattle, horses, sheep, farming utensils, household and kitchen furniture, with everything he possessed." Had the will stopped here, no one could doubt that it would have passed an estate in fee to the realty, and an absolute right to the personalty. But it did not stop with this sentence. The testator, for some reason, added the words, "to have and to hold during her life." Reading the two clauses together, it is equally clear that if the testator had closed his will with the last sentence, Mrs. Sinclair would have taken only a life estate in the property under the will. The first clause granting the property in fee would have been controlled by the limitation imposed in the second clause, giving it "to her during life." But the testator seems not to have been satisfied with this limitation. For some reason he thought proper to go further, and he added the words "to do with as she sees proper before her death." Obviously these words were used for some purpose, and the question naturally suggests itself, for what purpose?

The words employed throughout the will are such as the ordinary mind of the country would most likely use in the draught of an instrument of this character. When taken together they are plain, and in no sense technical. It is apparent that the testator at first did not intend to give his wife an absolute fee in the estate, or he would have contented himself with the first clause in the will, when he gave her "all his estate, both real and personal." And to my mind it is equally clear that he did not intend to restrict her interest to a life estate in the property, or he would have closed the disposing clause of his will with the words "to have and to hold during her life." Not content to leave the will with the two clauses referred to, he added the words "and to do with as she sees proper before her death." Can it be said that these words meant nothing, or are so in conflict with what precedes them as to be irreconcilable? If so, they must be discarded. If not, they are to be read as part of the will, and reconciled with the preceding clause, and the object of the testator deduced and collected from the whole in-

strument. It must be admitted that the testator was not satisfied with the disposition he had made of his property by the first and second clauses of his will, or he would not have added the words "to do with as she pleases." I think I have shown that the testator did not intend to give his wife an absolute estate in fee, nor did he wish to restrict her interest in his estate to a life estate. If this be conceded, and I think it must be, as the conclusion is fairly inferable from the first and second clauses of the will, then it must be admitted that he had another object in view in adding the words he did. To my mind that purpose is apparent. It is evident that he was dissatisfied with the will as it stood without the addition of the last clause. He desired to invest his wife with a discretionary power over the estate, to be exercised, if she saw proper, by doing with the property as she pleased before her death. No other construction of the will under the law reconciles all its parts. It alone gives effect to all of its words, and, I think, clearly indicates the intention of the testator.

I have thus far discussed the construction of the will, and have tried to gather the intention of the testator from the instrument itself, independent of surrounding circumstances. But the law says that the circumstances under which a will is made are always important and often of pregnant import as indicating the intention of the testator. At the date of the will the testator owned a small hill-farm, containing 110 acres of land, in Hampshire county, remote from the line of any public improvement. At that time its chief value was for farming purposes, although it is said to have overlaid a bed of fine coal. Still, it possessed no intrinsic value on account of its supposed coal properties, as there was no outlet to market for it. In fact, the will was made some three years before the Baltimore and Ohio Railroad obtained its charter, and when that region of country to a very great extent, was in its primitive condition. At that time the idea of developing a coal-field in that region did not enter the brain of the best informed and its most sanguine people. And if it did, the time was too remote to challenge the attention of even the speculator of that period. I may, therefore, safely conclude that the testator made his will entirely without reference to any supposed speculative value the farm possessed on account of its coal properties, but that he looked to and estimated the property only for its value as a farm. In looking at the will in its various aspects, to get at the intention of the testator, one thing is manifest, that he was endeavoring to make the best disposition he could of his small estate, for the benefit of his family. At that time it consisted of his wife and eight children, all of whom were objects of his bounty. If, then, we look to the situation of the parties, and the motives that must have operated on the mind of the testator when he made his will, we find the estate to be disposed of was small, whilst the number of those to be provided for was large. At that time the farm was worth but a few hundred dollars, whilst he had a wife and eight children to provide for. It is evident that he did not think it wise to divide his estate, but deemed it best for all concerned to keep it together under the control of his wife. He was poor, and not in a condition to make any other provision; he desired to provide for all of his family, and in no way could he do it so well as to leave the whole of his small estate under the control of his wife, who, like himself, was the natural protector and guardian of the rights of their children, and who could better take care of the family by having the estate kept together. A division of such an estate would have made no provision for either wife or children. Such must have been the reasons operating upon the testator, when he used the language found in the last clause of his will. When, then, we look at the circumstances surrounding the testator at the time he made his will, and consider them in connection with the instrument itself, I am strengthened in the conviction that the view I have taken of the will is correct, and that the intention of the testator was to give his wife, under any and all circumstances, a life estate in the property, coupled with the power of a general disposition over the same, to be exercised if she thought it was for the interest of herself and children.

I have thus far discussed the intention of the testator as derived, first, from the instrument itself; and secondly, from the instrument in connection with the circumstances that surrounded him at the time he made his will. In this discussion it was necessary, to some extent, to consider the frame of the will, and the various clauses in it. I propose further to examine it, to ascertain, first, whether the testator has used such words as clearly confer a power of disposition, or that such power may be fairly inferred from them. And if such power is conferred in express terms, or words are found in the will from which the power may fairly be inferred, to determine then to what it relates. It is laid down by elementary writers, and I think established by judicial exposition, that where an express estate for life is given, and a power of disposition added, the devisee takes an estate for life, with power to dispose of the reversion, and the execution of the power passes the fee. In support of this position I rely upon an unbroken current of authorities, both English and American. Prest. Est.; Cruise, Dig.; 16 Johns. 537; 3 Lomax, Dig. 216; 1 Pick. 318; 10 Ves. 370; 1 P. Wms.; 3 Leon.; 1 Call, 7; 1 Wash. T. 266; 3 Leigh, 35, 507; 2 Johns. 392; 8 Vin. Abr. 234, 235; 3 U. S. Dig. 678, § 204.

In the case we have under consideration, the words used by the testator, and which the defendants claim confer a power of

general disposition, follow the language used for creating the estate for life. It is not denied by the complainants that an estate for life is created. The defendants, however, insist that the estate for life is coupled with a power which, if executed, passes the fee. And what are the words used to create this power? The right "to do with as she sees proper before her death." To the ordinary mind in the country, such language, when used alone in connection with property, conveys the idea of a gift of an absolute right in the property. And I think, upon an examination of the authorities, it will be found that the courts have universally held that when a testator uses the words, "to do," or, "to dispose of as the devisee may think proper," or as he thinks best, that such words, when they stand alone, are to be regarded as equivalent to words which express an absolute gift of the estate, and when they are connected with words that create a life estate, they confer a power of disposal upon the devisee of the life estate, which must be exercised to be effective. In the case of Burwell's Ex'rs. v. Anderson's Adm'r, 3 Leigh, 355, Judge Tucker, the president of the court, and a most eminent judge of a court inferior to none in its day, says: "From the earliest time it has been among the received doctrines of the common law that an absolute and unqualified power of disposing, conferred by will, and not controlled or explained by any other provision, should be so construed as a gift of the absolute property." Under this authority, if the words stood alone, it cannot be doubted that the testator would be understood in law as intending a gift. In the case just cited, the same judge said that "every man of ordinary capacity would understand a power to dispose of a thing as he pleased, as a gift of the thing itself." In this case the words do not stand alone, but follow words that create and express an estate for life in the devisee, and are in conflict with the words which create the supposed power. It cannot be denied that the words "to have and to hold during life," are in conflict with the words "to do with as she sees proper," and unless reconciled, I would be constrained to conclude that the testator intended to create two estates, entirely inconsistent with each other. Such, however, cannot be the case in fact or in law. For it is said, "Where there is an express and inconsistent estate for life given, the construction of the instrument is altogether different. For the express estate for life negatives the intention to give the absolute property, and converts these words into words of mere power, which, standing alone, would have been construed to convey an interest." This appears to me to be very clearly established by the cases that were cited at the bar, which further lay it down that where an interest and not a mere power is conferred, the absolute property is vested without any act on the part of the legatee; but where a power

only is given, that power must be executed or it will fail. 3 Leigh, 357.

In support of this position, two cases are cited, having a most striking resemblance to the one at bar. In the case of Liefe v. Saltingstone [1 Mod. 189], cited in 8 Vin. Abr. 235, the testator used the language: "And by her to be disposed of, to such of my children as she shall think fit." And in the case of Steele v. Levisay, 11 Grat. 463, the testator devised his property substantially in the same way, giving his wife his property during her life, to be disposed of by her to "such of his children as she thought proper and right." In both cases a life estate is granted to the wife, and in both the testator adds words similar, if not almost identical. In the first, giving her liberty to dispose as she sees fit, and in the other "as she sees proper." I have seldom, if ever, met with two cases so striking in their analogy. In the case cited in Viner's Abridgment, it is true that one of the judges held that the wife had power to dispose of the life estate only, but the majority of the court held otherwise, and decided that the devisee under the will took an estate for life with a power to dispose of it. And to the same effect is a case to be found in 8 Vin. Abr. 234. It will be perceived in the last two cases cited, that the question was distinctly raised whether the power of disposition applied to the life estate or to the fee. And the court, in both cases, held that the power applied to the fee and not the life estate. I cannot see how it could be otherwise. Clearly a devisee of a life estate could dispose of such an estate without words of power added. If the intention of the testator was to give her a life estate only, then the words conferring the supposed power were unnecessary and superfluous. The case cited by the defendants in 20 Grat. 692, of May v. Joynes, is a strong authority in support of their position. In this case there is a striking resemblance in one feature of the will to the will of Sinclair. May gave all his estate, both real and personal, to his wife, to have (hold) during her life, but with power to make sale of it with only one restriction, that whatever remained at her death after discharging her debts, was to be divided amongst his heirs, as provided for in his will. Here was an estate for life devised to the wife with authority to sell, with, however, the restriction alluded to. The court, in deciding this case, decreed that the restriction is void for uncertainty, and that the devisee takes an absolute right in the property, holding the real estate in fee. Now, it must be apparent that rejecting the limitation or restriction upon the devisee, she took either an estate in fee or a life estate, with full power to sell; or, in the language of the will, the testator gave to his wife, his "whole estate, real and personal, to her during her life, but with full power to make sale."

What, then, is the difference between the

case cited and the one under consideration? The case of May grants a life estate with full power to sell, whilst the case at bar devises a life estate with power "to do with as she pleases before her death;" or, in other words, to sell it, and use the proceeds for the benefit of herself and children, or to divide it amongst her children, or to dispose of it in any way she may think proper. If, then, the court reached the proper conclusion in a case where there was a restriction or limitation, as in the case of May, can there be any doubt as to the disposition of the question under consideration? If the will in the case of May conferred on the devisee the absolute property, with the absolute right to spend the whole of it, can there be any doubt that the will in this case confers the same right of property, with a like power of disposition? The considerations I have presented lead me to the conclusion that where an express estate for life is given, followed by a power of disposition, the devisee will take either an estate in fee or an estate for life, with the power to dispose of the fee, unless there is a provision in the will controlling or explaining the words of disposal. And this proposition, with the qualification stated, leads me briefly to notice the authorities cited by the complainant in support of the position maintained by him, that the devisee only took a life estate under the will.

Upon an examination of the authorities cited by the complainant, I think they will be found in a class of cases where there is a provision in the will controlling or explaining the words of disposal. In nearly all, if in fact not all, of the cases relied on, there is a subsequent clause in the will which would have to be wholly rejected, unless the previous words of disposal are to be understood in a qualified sense, and that the different clauses taken together show that it was the intention of the testator to apply the words to the life estate only. Such, however, is not the case in the will under consideration. In this instance the words of power follow the words creating the life estate and enlarge the powers of the devisee over the estate.

Had the words conferring the power preceded the words creating the estate, the power would most likely be restricted, by the estate granted, and the devisee would only take a life estate under the will. In the case of Boyd v. Strahan, 36 Ill. 355, so confidently relied on by the complainants in support of their position, two clauses are found in the will, inconsistent with each other, creating different estates. By the eighth clause the testator gives all of his personal property to his wife, "to her and to her heirs and assigns forever." By the next clause he gives to her the residue of his personal property, to be at her entire disposal during her life. The court held that the first clause gave to the legatee the abso-

lute ownership in certain personal property, and the next clause gave to her in certain other personal property an estate for life, and that the words "during her natural life" qualified the power of disposal so as to make it mean such a disposal as a tenant for life could make. As I before remarked, in this case the words of disposal were antecedent to the words "during her natural life," and consequently were qualified by them. And so in the case of Bradley v. Westcott, 13 Ves. 452. There the testator gave his personal property "to the sole use and behoof of his wife for and during the term of her natural life, to be at her full, free, and absolute disposal during her natural life, without being in anywise liable to be called to any account concerning the amount, value, or particulars thereof, by any person whomsoever." The testator further authorized his wife to dispose by will of certain portions of the personal property, and of five hundred pounds in money. The question before the court was whether, under the will, the widow took the absolute property or only the life estate. The court held that she took only a life estate; that under the ambiguous words thrown in he could not extend that interest to the absolute property; that the subsequent clauses showed that the testator did not intend to give, by the words of disposal in the first clause, a power over the whole. The court decides that the words of power in this instance must be held to apply to the interest for life only. And this construction is clearly right. The testator by the first clause gives his estate to his wife "for and during the term of her natural life." These words create only a life estate, but he adds immediately, "to be at her full, free, and absolute disposal and disposition during her natural life." If the testator had omitted the repetition of the words "during her natural life," there would have been no qualification or restriction of the preceding words "to be at her full, free, and absolute disposal and disposition." But he seems to be careful in both clauses to limit the estate to the life estate, as the term "during her natural life" both precedes and follows the words of power. In this respect it is different from the case under consideration, as no words follow the words which are used by the testator indicating an intention to give the devisee unlimited power over the property.

But I may safely conclude, from the reasoning of the court in this case, that if the first clause, in which the testator gives his wife the property, to be at her free and absolute disposal during her life, stood alone, she would have taken the absolute property. But that subsequent clauses clearly evinced a contrary intention on the part of the testator, and in order to give effect to them, the words of disposal should be construed as applying to the life estate only. But if I had any doubt as to the true construction to

be given the will of Sinclair, it would be removed by the case of Smith v. Bell, 6 Pet. [31 U. S. 68], cited by complainants. In that case there was a bequest of all personal property to the wife absolutely, and then a provision that the remainder, after her decease, should be for the use of his son. The court held that the last clause qualified the first, and showed the intent of the testator that the widow should take only a life estate. Chief Justice Marshall, in giving the opinion of the court, uses the following language: "The first part of the clause, which gives the personal estate to the wife, would undoubtedly, if standing alone, give it to her absolutely. But all the cases admit that a remainder, limited on such a bequest, would be valid, and that the wife would take only for life. The difficulty is produced by the subsequent words. They are, which 'personal estate I give and bequeath unto my wife, Elizabeth Goodwin, to and for her own use and benefit, and disposal absolutely.' The operation of these words, when standing alone, cannot be questioned. But suppose the testator had added the words 'during her natural life.' These words would have restrained those which preceded them, and have limited the use and benefit, and the absolute disposal given by the prior words, to the use and benefit, and to a disposal for the life of the wife. 13 Ves. 444. The words, then, are susceptible of such limitation. It may be imposed on them by other words. Even the words 'disposal absolutely' may have their character qualified by restraining words, connected with and explaining them, to mean such absolute disposal as a tenant for life may make." It will be perceived that the learned judge decides in this case that where there are words of limitation and restriction following the words of disposal in a will that they qualify the preceding words. But otherwise, where the words of disposal stand alone, or follow words used by the testator, which would create an inconsistent estate, as in this case. I have thus noticed the more prominent authorities cited and relied on by complainant. The other cases cited are similar in their character, and I deem it unnecessary to notice them further. None of them, so far as I have had access to them, meet the case under consideration. In every one of them there is no subsequent clause, conferring a power of disposal; but the subsequent clause in every instance is a restriction upon the power of disposal.

In this case the subsequent clause, if it means anything, clearly intended to give the wife full and complete power over the whole property. In the view I have taken of this case, but one other question presents itself for consideration, and that is, whether the power conferred by the will has been executed. If I am right in the position I have taken in regard to the will, I cannot doubt as to this question. Indeed, it is so free from doubt, that I hardly think it necessary to do more than briefly refer to it. The deed was executed by Nancy Sinclair during her life. It refers to the will of her husband as the source of her title to the land conveyed, and transfers all her right, title, and interest whatever to the Union Potomac Company, under whom the defendants claim in this case. I am therefore of the opinion that Robert Sinclair by his will devised his estate to his wife during her life, with full power to dispose of it if she thought proper; that an exercise of that power during her life would pass the fee; that she did execute that power in her lifetime, and conveyed the land in question to the Union Potomac Company, under whom the defendants claim title; and that by the will of her husband, and her deed executed under it, the defendants took the absolute right of property in the land, and hold the same in fee. The injunction heretofore granted will be dissolved, and the bill dismissed.

[NOTE. Reversed by the supreme court on the ground that the words "to do with as she sees proper before her death" only conferred power upon the beneficiary to deal with the property in a manner consistent with her life estate, and that the deed by her in fee simple passed no greater estate than that which she took under the terms of the will, to wit, the life estate.

[It was urged by respondents, upon the appeal, that complainant was estopped by the foreclosure of a mortgage executed by the grantee to the life tenant as part of the purchase money, and by the latter assigned to complainant and another, who had previously purchased the interests of the heirs at law, and on which foreclosure the mortgaged property was purchased by a remote grantor of defendants. The court held, however, that, in the absence of proof that any representations as to the title inconsistent with the fact were made to evidence the purchase at foreclosure sale, purchaser was bound by the rule of caveat emptor, and the doctrine of equitable estoppel had no application. Brant v. Virginia Coal & Iron Co., 93 U. S. 326.]